FILED

2021 Nov-10  AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| DONNA ELIZABETH CODY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.   4:20-cv-00568-HNJ |
| | ) | |
| SOCIAL SECURITYADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff Donna Cody seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability, disability insurance, and supplemental security income benefits.   The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.   The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 9).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. §§ 404.1505(a), 416.905(a).   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process.   *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far.   *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).   Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."   *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02.   *Id.* at §§ 404.1520(d), 416.920(d).   If a claimant's impairment meets the applicable criteria at this step, that claimant's

impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925.   That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.   *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.   20 C.F.R. §§ 404.1520(e), 416.920(e).   At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.   *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.   *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.   20

C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g).   If the claimant can perform other work, the evaluator will not find the claimant disabled.   *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).   If the claimant cannot perform other work, the evaluator will find the claimant disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"   *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.   *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Id.* (citations omitted).   Nonetheless, substantial evidence exists even if the evidence preponderates

against the Commissioner's decision.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Cody, age 44 at the time of the ALJ hearing, protectively filed applications for a period of disability, disability insurance, and supplemental security income benefits on November 28, 2018, alleging disability as of October 11, 2018.   (Tr. 47, 85, 205-14). The Commissioner denied Cody's claims, and Cody timely filed a request for hearing on May 29, 2019.   (Tr. 84-131, 143-44).   The Administrative Law Judge ("ALJ") held a hearing on October 30, 2019 (Tr. 45-81), and issued an opinion on January 15, 2020, denying Cody's claim.   (Tr. 7-25).

Applying the five-step sequential process, the ALJ found at step one that Cody did not engage in substantial gainful activity after October 11, 2018, her alleged onset date.   (Tr. 12).   At step two, the ALJ found Cody had the severe impairments of status post cerebrovascular accident (CVA), neurocognitive disorder, depression, anxiety, obesity, carotid artery dissection, hypertension, and methamphetamine abuse.   (*Id.*). At step three, the ALJ found that Cody's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. 13).

Next, the ALJ found that Cody exhibited the residual functional capacity ("RFC")

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must avoid commercial driving, unprotected heights, hazardous machinery, and the [*sic*] climbing ladders, ropes, or scaffolds. She can understand, remember, and carry out simple instructions with occasional decision-making and occasional contact with others. She can manage infrequent, less than occasional, changes in the work setting. If afforded mid-morning, lunch, and afternoon breaks, those mental work activities can be sustained over a two-hour period in order to make up an 8-hour day.

(Tr. 15).

At step four, the ALJ determined Cody could not perform her past relevant work as a nurse assistant. (Tr. 23). However, at step five, the ALJ determined Cody could perform a significant number of other jobs in the national economy considering her age, education, work experience, and RFC. (Tr. 24). Accordingly, the ALJ determined that Cody has not suffered a disability, as defined by the Social Security Act, since October 11, 2018. (Tr. 25).

Cody timely requested review of the ALJ's decision. (Tr. 202-04). On March 20, 2020, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-6). On April 24, 2020, Cody filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Cody argues the ALJ failed to properly determine her mental residual functional capacity based on the medical opinion evidence, relied on a flawed hypothetical question to the vocational expert, and failed to properly evaluate her

subjective symptoms.  For the reasons discussed below, the undersigned concludes none of those contentions warrants reversal.

## I.  The ALJ Properly Considered the Medical Opinions When Assessing Cody's Residual Functional Capacity

Cody first asserts the ALJ improperly considered the opinions of consultative psychological examiner Jon G. Rogers, Ph.D., and state agency examiner Robert Bare, Ph.D., when he assessed Cody's mental residual functional capacity.  For the reasons discussed, the court disagrees and finds that the ALJ properly considered those medical opinions.

On January 18, 2017, the Commissioner revised the regulations governing the assessment of medical opinion evidence for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1520c, 416.920c).  Cody's claim, filed on November 28, 2018, falls under the revised regulations.

Pursuant to the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather, the ALJ must apply the same factors in the consideration of all medical opinions and administrative medical

findings, rather than affording specific evidentiary weight to any particular provider's opinion. *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ also may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(iv), 416.920c(c)(3)(i)-(iv). The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file. 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v). The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to "evidence showing a medical source has

familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."   20 C.F.R.   §§  404.1520c(c)(5), 416.920c(c)(5).

**A.**   **The ALJ Properly Considered Dr. Rogers' Opinion, and Substantial Evidence Supported the ALJ's Decision**

Jon G. Rogers, Ph.D., performed a consultative psychological evaluation on April 5, 2019.   During Dr. Rogers' examination, Cody reported symptoms of depression, anxiety, and mania.   She received diagnoses of depression and anxiety after she suffered a stroke on October 11, 2018.   She took prescribed medications which helped her "some."   She reported limited daily activities, including managing personal hygiene, watching television, and talking on the phone.   She also acknowledged a history of abusing cigarettes, alcohol, methamphetamines, and marijuana, though she no longer used any of those substances.

During the mental status examination, Cody displayed good appearance; appropriate dress, grooming, and hygiene; alert facial expression; no remarkable mannerisms; average motor activity; unremarkable physical appearance; and cooperative attitude.   She produced spontaneous speech, with normal conversation and articulation.   She displayed restricted, anxious, and depressed mood.   She demonstrated good orientation as to time, place, and person.   She could not perform the serial 7's subtraction task or spell the word "world" backward, but she correctly

answered three math problems.   She correctly repeated seven digits forward and four digits backward, and she could recall three objects after five minutes.   She could discuss her activities from the day before the evaluation, and she could recall the birthdays of family members and her age when she graduated high school.   She could name the President of the United States, the Governor of Alabama, and the mayor of her hometown.   She knew the number of weeks in a year.   She could interpret proverbs and recognize the similarity among pairs of objects.   Dr. Rogers observed no blocking, muteness, repetitions, flight of ideas, loose associations, or tangential or circumstantial thinking.   He noted normal stream of talk, mental activity, and speech; fair judgment; and fair insight. (Tr. 682-85).

Regarding Cody's functional abilities, Dr. Rogers stated:

> Ms. Cody is able to function independently.   The quality of her daily activities is below average.   The medical evidence of record provided by DDS was reviewed and those findings were considered in the overall assessment of the patient.   She presented on this testing occasion stating that she cannot work "because of my stroke . . . I get tired easy.   I still got blood clot in brain and aneurysm in neck.   I can't drive and can't go nowhere. . . go to occupational therapy 2 times a week.   I put my clothes on backward and my shoes on the wrong feet.   I can't tie my shoes, I had to re-learn to do everything."   She reported depression and anxiety are factors in her employability.   Problems include difficulty concentrating, "no motivation."   Cognitive damage probably occurred as a result of CVA/TBI.

(Tr. 685-86).   Dr. Rogers assessed major vascular neurocognitive disorder, unspecified depressive disorder, and unspecified anxiety disorder.   (Tr. 686).

Dr. Rogers opined that Cody provided satisfactory effort and motivation during the evaluation.   He characterized Cody's mental impairment as "severe," but he believed she could manage her financial benefits and perform most activities of daily living.   (Tr. 687).   "Cody's ability to understand, remember, and carry out instructions would be moderately impaired.   Her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting would be severely impaired."   (Tr. 688).

The ALJ found Dr. Rogers' opinion "somewhat persuasive," reasoning:

> While the claimant would certainly benefit from a reduction to simple work due to her impairments, there is no evidence any of her impairments cause her to be "severely impaired" in handling work pressure.   There is very little evidence of mental symptoms noted by any treating source and the claimant reported she has improved on her medications.

(Tr. 20).

Cody argues the ALJ "erred by concluding that Dr. Rogers['] opinion that [] Cody is severely impaired in handling work stress is not supported by any symptoms recorded in [Cody's] treatment records and inconsistent with evidence that [Cody] had some improvement with treatment."   (Doc. 15 at 5).   According to Cody, the ALJ failed "to recognize that the Administration's own psychologist, Dr. Bare, recognized that [] Cody improved with treatment . . ., but still found Dr. Rogers['] opinions 'supported by substantial evidence in [the] file.'"   (*Id.* (citing Tr. 101) (last alteration in original)).

11

However, the record does not support Cody's assertion.   As part of his assessment of Cody's file, state agency consultant Dr. Bare stated Dr. Rogers' opinion "is *partially* consistent and supported by the objective evidence in file."   (Tr. 101) (emphasis supplied).   The ALJ's decision corresponds with a finding that the evidence *partially* supports Dr. Rogers' opinion, as the ALJ's RFC finding encompassed some limitations of Cody's ability to handle work pressures, including limiting her to occasional decision-making and less than occasional changes in the work setting.   (Tr. 15).

Cody also asserts the ALJ entirely failed to discuss Dr. Rogers' finding that she suffered severe limitations in responding to supervision and coworkers.   While the ALJ stated the evidence did not support severe impairments in handling work pressure, he did not explicitly state whether the evidence supported severe impairments in responding to supervision or coworkers.   But that omission does not deprive the ALJ's decision of substantial evidentiary support or demonstrate that the ALJ failed to consider the entire record.   The ALJ's statements that there exists "very little evidence of mental symptoms noted by any treating source," and that Cody "reported she has improved on her medications," support both a finding that Cody did not suffer severe limitations of her ability to handle work pressure and a finding that she did not suffer severe limitations of her ability to respond to supervision and coworkers.   Moreover,

the ALJ addressed Cody's limitations in handling supervision and coworkers by restricting her to occasional contact with others.   (Tr. 15, 23).

Cody also asserts her treatment records do not document improvement in her mental conditions, contrary to the ALJ's finding.   (Doc. 15, at 5-6).   As Cody points out, her treatment records do document a history of anxiety, depression, and confusion. (*See* Tr. 429, 432, 436-38, 467, 475, 663-64, 759-60, 793, 803).   But the mere presence of those conditions, even if they persist over time, does not warrant a finding of disability because symptoms alone do not determine a claimant's ability to perform work-related activities.   *Moore,* 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Other substantial evidence supports the ALJ's decision to reject Dr. Rogers' conclusion that Cody suffered severe limitation of her ability to respond appropriately to supervision, co-workers, and work pressures.   First, during Dr. Rogers' clinical examination, Cody displayed restricted affect and anxious and depressed mood, but she produced good results on all functional testing, other than her attempt to perform serial 7's and spell "world" backward.   Dr. Rogers opined that Cody could function independently, and he indicated her medication helped her some.

The other records do reflect some mental health struggles, but they do not depict severe functional limitations resulting from Cody's mental health condition.   On December 6, 2018, Cody reported anxiety and depression, but she denied experiencing

those symptoms on November 26 and December 13, 2018, and on February 25, 2019. (Tr. 433, 437, 440, 587).   On December 12, 2018, less than two months after her stroke, she displayed appropriate mood and affect and intact recent and remote memory.   (Tr. 430).   She also reported depression during a March 5, 2019, neurology visit.   The clinical examination revealed a flat affect, but full orientation and intact memory.   (Tr. 662-64).   On April 8, 2019, she experienced confusion but no other mental health symptoms.   (Tr. 760).   She displayed normal cognition during a June 25, 2019, emergency room visit.   (Tr. 706).   During another emergency room visit on June 15, 2019, she displayed alertness, no acute distress, and full orientation.   (Tr. 714).   On July 11, 2019, Cody reported depression, but she displayed full orientation, normal mood, and normal affect.   (Tr. 801, 803).   On July 25, 2019, Cody denied anxiety, depression, and memory loss, though she received treatment for depression and anxiety. The examiner found her awake, alert, fully oriented, and in no acute distress.   (Tr. 756). On September 4, 2019, she portrayed a flat affect, but she displayed full orientation and intact memory.   (Tr. 794).

These records portray that Cody periodically suffered some symptoms of depression, anxiety, and confusion, but they do not portray that she suffered severe mental health limitations that persisted over a significant period of time.

Based upon the foregoing, the court concludes the ALJ properly considered Dr. Rogers' assessment, and substantial evidence supported the ALJ's decision.

14

**B.     The ALJ Properly Considered Dr. Bare's Opinion, and Substantial Evidence Supported the ALJ's Decision**

Dr. Bare assessed Cody's mental condition on April 26, 2019, based upon a review of her medical records.   He opined that, due to depression and anxiety, Cody would experience moderate impairment of the abilities to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt or manage herself.   He expected Cody could manage her symptoms with continued mental health and medical treatment.   (Tr. 99-100).

In a Mental Residual Functional Capacity Assessment, Dr. Bare noted Cody would experience no significant limitations in remembering locations and work-like procedures, and she would experience moderate limitations in understanding and remembering detailed instructions.   She could understand and remember simple instructions but not detailed ones.   (Tr. 104-05).

Cody would experience no significant limitation in her abilities to carry out very short, simple instructions; perform activities within a schedule; maintain regular attendance/ be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and make work-related decisions.   She would experience moderate limitation in her abilities to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and work week

without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. She could "carry out simple instructions and sustain attention to simple, routine, familiar tasks for two-hour periods in an 8-hour workday, utilizing rest breaks." She "would benefit from regular rest breaks and a slowed pace but would still be able to maintain an acceptably consistent work pace." (Tr. 105).

Cody would experience no significant limitation in her abilities to ask simple questions, request assistance, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. She would experience moderate limitation in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Bare advised that Cody should experience only casual, non-intensive, and limited contact with the public, and only casual contact with coworkers. She could tolerate only supportive, encouraging, respectful, calm, tactful, and non-confrontational feedback. (Tr. 105-06).

Cody would experience no significant limitation of her abilities to appreciate normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, set realistic goals, and make plans independently of others. She would experience moderate limitation in her ability to respond appropriately to changes in the

work setting.   Dr. Bare opined that Cody could adapt to infrequent, well-explained

workplace changes.   (Tr. 106).

In considering Dr. Bare's assessment, the ALJ stated:

> As already discussed, the medical evidence of record shows very limited
> mental health symptomology.   The depression and anxiety improved
> with medication.   However, Dr. Bare included limitations that are not
> phrased in vocationally relevant terms.   For example, his statement that
> the claimant's feedback should be supportive, encouraging, respectful,
> calm, tactful, and non-confrontational does not pertain to any vocational
> description in the Dictionary of Occupational Titles or its companion
> publications, such as the Selected Characteristics of Occupations.
> Presumably, every worker would prefer the work environment described
> by Dr. Bare, but the personality and management style of a worker's
> supervisor is not an aspect of the circumstances of employment that could
> realistically be covered by the Administrative Law Judge or vocational
> expert in the context of a disability hearing.   However, the undersigned
> has considered the effect [of] the claimant's impairments on her ability to
> perform the mental requirements of work as set out in SSR 85-15.[2]   This
> ruling notes that an individual should be able to understand, carry out, and
> remember simple instructions; to respond appropriately to supervision,
> coworkers and usual work situations; and to deal with changes in a routine

---

[2]  Social Security Ruling 85-15 states, in pertinent part:

> Where a person's only impairment is mental, is not of listing severity, but does prevent
> the person from meeting the mental demands of past relevant work and prevents the
> transferability of acquired work skills, the final consideration is whether the person
> can be expected to perform unskilled work.   The basic mental demands of
> competitive, remunerative, unskilled work include the abilities (on a sustained basis)
> to understand, carry out, and remember simple instructions; to respond appropriately
> to supervision, coworkers, and usual work situations; and to deal with changes in a
> routine work setting. A substantial loss of ability to meet any of these basic work-
> related activities would severely limit the potential occupational base.   This, in turn,
> would justify a finding of disability because even favorable age, education, or work
> experience will not offset such a severely limited occupational base.

SSR 85-15, 1985 WL 56857, at *4.

work setting.   Thus, these are the activities the undersigned considered in
reaching the claimant's residual functional capacity. . . .

(Tr. 23).

Cody asserts the ALJ "erred by failing to state how persuasive he found" Dr.

Bare's opinions.   (Doc. 15, at 8).   He relies upon Social Security Ruling 96-2p, which

stated, in pertinent part:

> When the determination or decision . . . is not fully favorable . . . the notice
> of the determination or decision must contain specific reasons for the
> weight given to the treating source's medical opinion, supported by the
> evidence in the case record, and must be sufficiently specific to make clear
> to any subsequent reviewers the weight the adjudicator gave to the treating
> source's medical opinion and the reasons for that weight.

SSR 96-2, 1996 WL 374188, at *5.   However, the Commissioner rescinded that Ruling

on March 27, 2017, upon adopting revised regulations regarding the appropriate

consideration of medical evidence.   82 FR 15263-01.

Moreover, although the ALJ did not specifically so state, his decision clearly

reflects he gave significant weight to Dr. Bare's assessment, except for the limitation to

supportive, encouraging, respectful, calm, tactful, and non-confrontational feedback.

Cody has not demonstrated how that limitation bears vocational relevance in the Social

Security context, or how that limitation should change the outcome of the

administrative decision.   Dr. Bare did not assess any more than moderate impairments

in any mental functional area, and the ALJ's RFC finding accommodated those

moderate impairments by limiting Cody to understanding, remembering, and carrying

out simple instructions with occasional decision-making, occasional contact with others, infrequent changes in the work setting, and normal mid-morning, lunch, and afternoon breaks.   (Tr. 15).

Cody has not pointed to any other errors in the ALJ's consideration of Dr. Bare's opinion.   The court finds the ALJ followed applicable law when assessing that opinion, and the ALJ's decision enjoyed substantial evidentiary support.

## II.   The ALJ Properly Accounted for All of Cody's Mental Impairments When Fashioning a Hypothetical Question to the Vocational Expert

Cody next argues the ALJ failed to include all her mental impairments in the hypothetical question to the ALJ.   "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)).   However, "the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

Here, as discussed, the court rejects that argument and finds that the ALJ properly accounted for all of her mental impairments, including her moderate limitations in concentration, persistence, and pace, when he fashioned a hypothetical question for the vocational expert.

When assessing whether Cody's mental impairments satisfied any of the listings for mental disorders, the ALJ found that Cody experienced moderate limitations in understanding, remembering, and applying information; in interacting with others; in concentrating, persisting, and maintaining pace; and in adapting and managing herself. (Tr. 13-14).   During the administrative hearing, the ALJ asked the VE to assume a hypothetical individual who, in addition to physical limitations,

> would be limited to understanding or remembering or carrying out simple instructions and occasional decision making and occasional contact with others, with infrequent or less than occasional changes in work setting, if afforded mid-morning, lunch and afternoon breaks, if those activities could be sustained over a two-hour period in order to make up an eight-hour day . . .

(Tr. 79).   That hypothetical question mirrored the ALJ's RFC finding.   (Tr. 15).   The VE responded that an individual with those limitations could not perform Cody's past work, but she could perform other work existing in significant numbers in the national economy.   (Tr. 79-80).   The VE's finding served as the basis for the ALJ's decision that Cody had not suffered a disability since her alleged onset date of October 11, 2018. (Tr. 24-25).

Cody argues the ALJ's finding that she is limited to understanding, remembering, and carrying out simple instructions failed to account for her moderate limitations in concentration, persistence, or pace.   She relies upon *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), in which the Eleventh Circuit joined other Circuits in

rejecting "the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 1180 (citations omitted).  Even so, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* (citations omitted).  In addition, an ALJ's hypothetical question can "adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations." *Id.* at 1180-81 (citations omitted).

Here, the ALJ did not rely solely upon the finding that Cody suffered moderate limitations in concentration, persistence, and pace when he fashioned his hypothetical question to the VE.  Rather, the medical evidence demonstrated that, despite her limitations in concentration, persistence, and pace, Cody could understand, remember, and carry out simple instructions; engage in occasional decision making and occasional contact with others; and endure infrequent or less than occasional changes in the work setting, if afforded mid-morning, lunch, and afternoon breaks and no more than two-hour, continuous work periods in an eight-hour workday.  (*See* Tr. 23 ("[SSR 85-15] notes that an individual should be able to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers and usual work

21

situations; and to deal with changes in a routine work setting. Thus, these are the activities the undersigned considered in reaching the claimant's residual functional capacity.")).

The ALJ relied upon Dr. Rogers' and Dr. Bare's opinions, other than Dr. Rogers' opinion that Cody would suffer severe limitation of her ability to handle work pressure, and Dr. Bare's recommendation that Cody only receive positive supervision. As discussed, the ALJ properly considered those opinions, and substantial evidence supported the ALJ's decision. *See Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 902 (11th Cir. 2014) ("The ALJ made an independent determination that Szilvasi retained the ability to 'perform simple, repetitive tasks with superficial interaction with others'" when he relied upon the opinions of state agency physicians who concluded the claimant could "understand and follow at least simple instructions, concentrate for shorter time periods, . . . make simple work-related decisions," and "was not significantly limited in his ability to understand, remember, and carry out very short and simple instructions"); *Neefe v. Comm'r of Soc. Sec.*, 531 F. App'x 1006, 1007 (11th Cir. 2013) ("Since the ALJ determined that the medical evidence demonstrated that Neefe could engage in simple tasks, despite moderate limitation in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments, implicitly, by limiting the hypothetical that was posed to the vocational expert to include only simple tasks or unskilled work."); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 28-29 (11th Cir. 2012)

("Here, unlike the case in *Winschel,* the ALJ clearly indicated that medical evidence showed that Scott could complete simple tasks on a regular basis.").

Moreover, the medical evidence as a whole does not support a finding that Cody suffered more severe limitations than the ALJ included in the hypothetical question to the VE.   (*See* Tr. 20 ("There is very little evidence of mental symptoms noted by any treating source and the claimant reported she has improved on her medications.")).

Finally, while the ALJ's hypothetical question did not specifically cite Cody's moderate restrictions in concentration, persistence, and pace, the ALJ implicitly accounted for those restrictions when he stated Cody could understand, remember, and carry out simple instructions; tolerate occasional decision making, occasional contact with others, and infrequent or less than occasional changes in the work setting; and function with mid-morning, lunch, and afternoon breaks, if limited to work on a sustained basis for no more than two hours at a time.   (*See* Tr. 23 ("Due to allegations that she has memory and focus problems, she is limited to simple work.   To reduce work related anxiety and stress, only occasional contact with others and infrequent, less than occasional, changes in the work setting.")).   *See Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 951 (11th Cir. 2013) ("The ALJ's hypothetical questions to the vocational expert fully accounted for Jacobs's moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment."); *Washington v. Soc. Sec. Admin., Com'r*, 503

F. App'x 881, 883 (11th Cir. 2013) ("The ALJ also explicitly and implicitly took into account Washington's moderate limitations in maintaining concentration, persistence, or pace by including the restrictions that Washington was limited to performing only simple, routine repetitive tasks with up to three-step demands, and only occasional changes in the work setting, judgment, or decision making.  Because the evidence showed that Washington could perform simple, routine tasks, the ALJ's hypothetical question to the VE which included this limitation adequately addressed Washington's limitations as to concentration, persistence, or pace.").

In summary, the ALJ included all of Cody's supportable limitations in the hypothetical question to the VE, and the ALJ's RFC finding based upon the VE's response to that hypothetical question enjoyed substantial evidentiary support

## III.   The ALJ Properly Considered Cody's Subjective Mental Health Symptoms, and Substantial Evidence Supported the ALJ's Decision

Finally, Cody asserts the ALJ improperly evaluated her subjective mental health symptoms and their effect on her ability to work.

> To establish disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."

*Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015) (quoting *Wilson*, 284 F.3d at 1225).  A claimant's testimony coupled with evidence that meets this

standard suffice "to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (Mar. 16, 2016). An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2016 WL 1119020 at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Cody testified she forgets to do things, experiences difficulty focusing, and feels

25

easily fatigued.  (Tr. 52-53).  She cannot remember how to work her mother's washer and dryer, and her mother manages her appointments for her.  (Tr. 61).  During a typical day, she sleeps approximately two to two-and-one-half hours because her depression medication makes her sleepy.  When she awakens, she makes lunch, "piddles" around the house, takes her dirty clothes to the laundry room, plays with her dog, walks around outside, watches television, and talks on the phone.  (Tr. 62-64).  She lives with her parents and two children, and her mother performs most of the household work.  (Tr. 58-59).

Her depression makes her feel like "nothing is good," and she "just don't want to go on."  (Tr. 65).  She typically avoids seeing other people.  (*Id.*).  Her anxiety makes her feel trapped and short of breath on a daily basis, and she becomes emotional over her anxiety symptoms almost every day.  (Tr. 67).  On an almost daily basis, she feels fatigued and does not want to do anything.  (Tr. 67-68).  Her inability to remember things and to manage her time constituted the primary reasons she felt she could not continue to work.  (Tr. 68).  She has not seen a psychiatrist because she needs "to find one that Medicaid will pay for, and they won't pay for it."  (Tr. 66-67).

The ALJ found that Cody's statements concerning the intensity, persistence, and limiting effects of her impairments were not consistent with the objective medical evidence.  He stated:

The claimant alleges debilitating symptomatology and limitations

associated with the alleged impairments, yet the evidence as a whole fails to confirm a disabling level of functional limitations caused by any physical or mental impairment. While it is reasonable the claimant may experience some symptoms that would cause some exertional and non-exertional limitations, the objective medical evidence does not support a complete inability to work.

(Tr. 17).   That statement indicates the ALJ followed applicable legal principles.

The ALJ also adequately articulated the reasons for his findings.  He stated Cody's condition had improved significantly with therapy since her stroke, and "[r]ecent treatment notes note only mild residual symptoms on the left side."  (Tr. 17).  As such, "[d]espite all of the allegations to the contrary at the hearing, the evidence shows a near complete return to normal functioning."  (*Id.*).  The ALJ also noted that "[t]he medical evidence documents very little, if any, mental symptoms, and the ones she reported such as anxiety and depression improved with her medications."  (Tr. 19).  Moreover, as discussed, the ALJ properly relied upon the opinions of Dr. Rogers and Dr. Bare. (Tr. 19, 23).  He also considered that Cody's testimony during the hearing did not match with her mother's testimony about Cody's daily activities.   (Tr. 22).

Moreover, substantial evidence supported the ALJ's findings.  As already discussed, the ALJ properly considered Dr. Rogers' and Dr. Bare's reports, and the medical records discussed in conjunction with the evaluation of those reports provide substantial evidentiary support for the ALJ's decision that Cody's mental health conditions would not reasonably cause the debilitating level of symptoms she alleged.

27

Cody asserts the ALJ "erred by criticizing [her] allegations regarding her mental health impairments because she has not obtained behavioral health treatment."   (Doc. 15, at 14).   The ALJ discussed Cody's lack of mental health treatment as follows:

> As . . . for the depression and anxiety, the claimant is followed by Family First.   The anxiety and depression has improved with medication.   She initially reported feeling anxious, fatigued, and sad.   *Mrs. Bowman [Cody's mother] testified the claimant is mentally unable to work, but there is no evidence of regular follow-up for depression and anxiety.*   The claimant began having depression and anxiety after the accident when she did not achieve the 100% functioning that she had prior to the accident.   She was initially prescribed Wellbutrin.   She was also prescribed Cymbalta, but that was discontinued when she reported no reduction in symptoms.   She was prescribed Ativan for anxiety, which she reported helped with the anxiety.   She reported a reduction in the depression with Celexa.   The medical evidence documents very little, if any, mental symptoms, and the ones she reported such as anxiety and depression improved with her medications.   She has reported fatigue, but it is not clear if it related to the anxiety and depression.   She reported her day consists of staying in the bed and eating.

(Tr. 19) (emphasis supplied).

When a claimant cannot afford treatment, an ALJ should not draw a negative inference from the claimant's failure to seek additional treatment.   *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1998); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("[P]overty excuses [a claimant's] noncompliance" with medical treatment.).   Thus, "[w]hen the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, [the court should] remand for further consideration." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264,

1268 (11th Cir. 2015) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (per curiam)).   "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists."   *Henry*, 802 F.3d at 1268 (citing *Ellison*, 355 F.3d at 1275).

Here, the ALJ appeared to draw a negative inference from Cody's failure to seek additional mental health treatment, without considering Cody's assertion that she could not afford additional treatment and could not obtain a Medicaid referral.   However, that inference did not create a reversible error, as the ALJ did not rely primarily upon Cody's failure to seek additional treatment in evaluating her subjective symptoms and determining her residual functional capacity.   Rather, as discussed, the ALJ considered the medical evidence displaying relatively normal mental health findings and the opinions of the consultative and state agency psychological examiners.   Thus, the ALJ's RFC finding did not derive solely, or even primarily, from Cody's failure to seek additional mental health treatment; it primarily emanated from substantial evidence undermining the alleged severity of Cody's mental health condition and the alleged scope of her limitations.   Accordingly, the ALJ's consideration of Cody's mental health treatment history does not manifest as error.   *See Green v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 516, 522 (11th Cir. 2017) ("[E]ven if we agreed with [the claimant] that the ALJ

drew an adverse inference from the fact that she had not sought specialized treatment for her fibromyalgia or back pain, [she] cannot show reversible error . . . [g]iven that the ALJ did not rely exclusively on [her] failure to seek specialized treatment when discrediting her testimony."); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 541 n.2 (11th Cir. 2016) (the ALJ improperly relied upon the claimant's deferral of treatment without considering his inability to afford the same; however, the ALJ's error did not warrant reversal because the ALJ buttressed the credibility assessment with other substantial evidence).

In summary, Cody fails to establish substantial evidence does not support the ALJ's consideration of her subjective symptoms.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 10th day of November, 2021.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE